A. C. STAPP *vs.* STEAMBOAT CLYDE.

April 25, 1890.

**Lakes wholly within State — U. S. Admiralty Jurisdiction.** — Inland lakes lying within the limits of the state are not navigable waters of the United States, and suits to enforce a lien against boats or vessels thereon are not within the admiralty jurisdiction of the United States.

**Same—State Law for Creating and Enforcing Liens against Vessels for Supplies.**—It is competent for the legislature of the state to create liens upon boats and vessels navigating such inland waters for supplies, etc., and to enact reasonable rules and regulations prescribing the mode of their enforcement.

**Same—Act held Constitutional.**—As to such claims, the jurisdiction of the state court is not impaired by the acts of congress; and chapter 83, Gen. St. 1878, is constitutional.

Appeal by plaintiff from a judgment of the district court for Hennepin county, entered pursuant to an order of *Smith*, J. The action

was commenced by attachment pursuant to Gen. St. 1878, *c.* 83, to enforce a claim of $190.65, for coal furnished, and the ground of decision was that the statute is unconstitutional, this objection having been taken by H. Trumbull, owner of the steamboat, appearing specially to object, on that ground, to the jurisdiction of the court.

*A. B. Choate,* for appellant.

*E. C. Betts,* for respondent.

VANDERBURGH, J. This action is brought to enforce a lien for supplies furnished the Clyde, a steamboat navigating the waters of Lake Minnetonka, in this state. The owner appeared and demurred to the complaint, which was sustained on the ground that the statute of this state authorizing such proceedings against boats and vessels is unconstitutional. Two questions are to be considered: (1) Whether, in such cases, the jurisdiction of the state courts is limited to common-law remedies in form; and (2) whether the proceedings authorized by the statute in question constitute due process of law.

1. The inland lakes lying wholly within the limits of the state are not navigable waters of the United States, and suits to enforce a lien for supplies, etc., against boats and vessels thereon are not within the admiralty jurisdiction of the district courts of the United States; and such claims are not maritime, within the meaning of the acts of congress on the subject. A maritime claim cannot be enforced in the state courts by any other than a common-law remedy, under the judiciary act of 1789, which confers exclusive jurisdiction in such cases upon the United States district courts. Section 563, subsec. 8, Rev. St. U. S. (p. 95,) includes a provision "saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it." This saving clause, of course, has reference to cases of admiralty and maritime jurisdiction; and the suitor is given the chance, in such cases, to pursue his remedy in admiralty, or avail himself of his common-law remedy *in personam,* which he may do in the state courts. *Baird* v. *Daly,* 57 N. Y. 249. But as to claims not in their nature maritime the state jurisdiction is not impaired, and the act referred to imposes no restriction upon the power of the states to prescribe such forms of procedure for their collection as may be deemed appropriate and necessary. *Brook-*

v.43m—13

*man* v. *Hamill*, 43 N. Y. 554. See *The Hine* v. *Trevor*, 4 Wall. 555, 1 West. Jur. 246, note; *The Belfast*, 7 Wall. 624, 644, 645. In the latter case, Justice Clifford says: "Authority does not exist in the state courts to hear and determine a suit *in rem* in admiralty, to enforce a maritime lien. Such a lien does not arise in a contract for materials and supplies furnished to a vessel in her home port; and, in respect to such contracts, it is competent for the states, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations prescribing the mode of their enforcement." Whatever may be the ultimate decision of the courts as respects the exception in favor of home ports upon navigable waters of the United States, there can be no doubt of the application of the principle just announced to the case at bar.

2. Gen. St. 1878, *c.* 83, authorizing actions against boats and vessels, subjects every boat or vessel used in navigating the waters of this state to a liability for debts contracted by the owner, master, agent, or consignee, for supplies furnished for the use of such boat or vessel, etc., and authorizes a complaint against such boat or vessel to be filed with the clerk of the district court of the proper county. A warrant of attachment then issues, directing the seizure of such boat, which is to be served and returned as other writs of attachment; and, upon the return of the warrant, proceedings follow against the boat or vessel as if the action had been instituted against the person on whose account the demand accrued. The master, agent, owner, or consignee may appear and answer the complaint on behalf of such boat or vessel. As respects the owner and those representing him, all of whom may appear and answer, there is no question, we think, but that the statutory provisions of this chapter are sufficient to constitute due process of law. The actual seizure and attachment of the property is presumptively notice of the proceedings to the owner, and, of course, gives jurisdiction of the subject of the controversy proceeded against. It is not necessary to determine, in this case, whether such seizure is notice to the whole world, or whether the proceedings and sale would be attended with the inci-

dents of a suit in admiralty. It is enough, for the purposes of this case, that, as against the owner, it is competent for the legislature to provide for liens in such cases, and prescribe the procedure adopted for their enforcement. Wap. Proc. in Rem., § 65, and cases. It is for the legislature to determine, in such cases, the manner in which notice should be given to the parties in interest. "It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend," and that "it is not impracticable for him to do so by the use of such reasonable efforts as the owners of property may generally be supposed to be capable of." *Happy* v. *Mosher*, 48 N. Y. 313; *Miller* v. *Town of Corinna*, 42 Minn. 391, (44 N. W. Rep. 127.)

Judgment reversed.