IN THE MATTER OF THE TRUST ESTATE OF
RICHARD MEEK, DECEASED.

No. 3049.

ARGUED APRIL 9, 1957.                    DECIDED FEBRUARY 24, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY RICE, C. J.

Richard Meek died testate on May 6, 1891. His last Will was duly admitted to probate in Honolulu, by and before the Honorable Sanford B. Dole, Justice of the Supreme Court of The Hawaiian Islands, at chambers. The testator created a testamentary trust. The trust has terminated and the present trustee, Bishop Trust Company, Limited, has filed in the circuit court, first circuit, Territory of Hawaii, a Bill for instructions as to distribution to be made of the corpus of the trust estate. While the Bill was pending in the circuit court, the judge having and exercising jurisdiction in such matters — then the Honorable Albert M. Felix — reserved amended questions of law to this Supreme Court with respect to said Bill and thus, pursuant to the provisions of Chapter 185, Revised Laws of Hawaii 1945, now Chapter 211, Revised Laws of Hawaii 1955, this court has jurisdiction of the matter.

By his Will, the said testator devised and bequeathed

all of his estate to the executor thereof "* * * in Trust nevertheless for the following uses and purposes." After providing for the payment of all of his debts, funeral expenses and costs of administration, the further and pertinent provisions of his Will are as hereinafter quoted:

"It is my Will That and of my said Estate My said Executor shall pay all of my just debts funeral Expenses and costs of administration.

"I charge and direct my Executor to collect all rents issues and income from my said Estate of every nature whatsoever and to pay all of the net proceeds thereof to my wife Mary Meek during her life.

"I direct my said Executor after the decease of my said wife Mary Meek to pay all of the net income rents and issues of my said Estate in equal proportions for the maintenance and support of Ely Crabb and Maud Crabb (grandchildren of Horace G. Crabb and Elizabeth Meek Crabb his wife) and Richard Reuter in Equal one third Portions share and share alike during their natural lives and on the demise of either of them the one third share of said legatee deceased shall go to the support and education of the issue of such deceased legatee and in default of issue the said one third share of such deceased devisee shall vest in the devisee or legatees surviving and their respective issue surviving in equal proportions taking by representation or 'per stirpes' And should two of said devisees or legatees die without issue lawfully begotten Then the remaining devisee or legatee surviving shall receive the whole net income from my said Estate during his or her natural life And should all Three of said legatees have at their decease lawful issue Then and in that event my said Executor shall upon the youngest child of said legatees reaching or attaining the age of twenty one make equal division giving to the child or children of each legatee

the one third share of my said Estate that will go by the provisions of This Will to the parent of said child or children

Provided always that no final distribution of my estate shall be made until each and every of the Three devisees and legatees herein named shall have died."

The facts are not in dispute.

Richard Meek had no issue. When he died he left his wife, Mary Meek, surviving him as his widow, and, as his nearest kin, Elizabeth Meek Crabbe, a sister, who died on December 9, 1895. She was the wife of Horatio G. Crabbe and they had four children, namely, John Meek Crabbe, Lydia Crabbe Allen, Clarence Linden Crabbe, and Horatio N. Crabbe. E. C. S. Crabbe and Clarence L. Crabbe, two of the parties to the proceedings herein, are children of Edward Clinton Simmons Crabbe and grandchildren of Clarence Linden Crabbe. Nothing is known of John Meek Crabbe and Lydia Crabbe Allen. (The family name has been variously spelled as "Crabb" or "Crabbe").

Ely Crabb and Maud Crabb, who are named in Richard Meek's Will, were the children of Horatio N. Crabbe so they were the grandnephew and grandniece, respectively, of Richard Meek.

Richard Reuter, named in the Will, was not related to Richard Meek, but is said to have been his "keiki hanai" (foster child).

Richard Reuter was born on September 13, 1879; Ely Crabb was born on June 22, 1883; and Maud Crabb was born on August 2, 1885; so, at the time of the execution of Richard Meek's Will, in 1890, Richard Reuter was eleven years old, Ely Crabb seven years old, and Maud Crabb five years old.

Mary Meek, the testator's widow died on May 6, 1895.

Maud Crabb died on September 12, 1940, without leaving issue. She was never married.

Ely Crabb died on December 3, 1949, leaving him surviving ten (10) adult children, namely, Evangeline P. Fernandez, Lydia K. Akiona, May W. Freitas, Eli M. Crabbe, Jr., Lily C. Fujinaka, Pearl L. Ching, Amethyst K. Wilson (formerly Amethyst K. Emmsley), Elizabeth H. Robertson, Myrtle Wong, and Richard H. Crabbe, who are hereinafter referred to as Ely Crabb's children.

Richard Reuter died on November 26, 1953, leaving issue him surviving a daughter, Phoebe K. Kauhane, and a grandson, William P. Reuter, Jr., a minor, born April 14, 1941, whose father, William Peter Reuter, son of Richard Reuter, died on March 11, 1953, and therefore predeceased the latter.

When Richard Reuter, the last survivor of the three named life beneficiaries died on November 26, 1953, the testamentary trust terminated, for at that time "the youngest child of said legatees" (the three named life beneficiaries) had attained the age of twenty-one, and final distribution of the corpus is required.

Five questions have been reserved to this Supreme Court, they are as follows:

"(1) Does the Will provide for disposition of the whole of the corpus of the Trust Estate among children and/or issue of deceased named income legatees where only two of the three deceased named income legatees had lawful issue?

"(2) If the answer to Question No. 1 is in the negative, does the Will provide for disposition of two-thirds of the corpus of the Trust Estate among children and/or issue of deceased named income legatees where only two of the three deceased named income legatees had lawful issue?

"(3) If the answer to either Question No. 1 or No. 2 is in the affirmative, should a child of a deceased child of a named income legatee share in the distribution of the corpus?"

"(4) If the answer to Question No. 1 is in the negative, should a distribution of corpus be made to Heirs of Richard Meek determined as of the date of death of Richard Meek?

"(5) If the answers to Questions No. 1 and No. 4 are in the negative, should a distribution of corpus be made to heirs of Richard Meek determined as of the date of death of Maud Crabb?"

The several briefs submitted and the oral arguments presented on behalf of the many parties to the proceedings, respondents in the court below, have contended, pro and con, as to what the answers should be to the said reserved questions, if answered *seriatim*. This court has given consideration to all of them. Together they present one major question, in answering which we answer and thus dispose of all of them.

The question is, How shall the corpus of the trust estate be distributed?

The "bone of contention" has been the next to the last paragraph of the said testator's Will, quoted *supra,* to the effect that, "* * * should all Three of said legatees have at their decease lawful issue Then and in that event my said Executor shall upon the youngest child of said legatees reaching or attaining the age of twenty-one make equal division giving to the child or children of each legatee the one third share of my said Estate that will go by the provisions of This Will to the parent of said child or children."

On behalf of E. C. S. Crabbe, Clarence L. Crabbe and all persons similarly situated, hereinafter referred to as the "Crabbe brothers, et al." attorneys C. Dudley Pratt and Daral G. Conklin, with Pratt, Tavares & Cassidy of counsel, have reasoned and contended as quoted *infra.*

"*Point I.* The express testamentary trust created by Richard Meek's will did not provide for a con-

tingency which has actually occurred, and the trustee now holds the corpus on a resulting trust.

"*A.* Richard Meek's words and meaning are clear and unambiguous, so that canons of construction cannot be used.

"*B.* The presumption against intestacy is not here applicable.

"*C.* Clear words are necessary to disinherit Richard Meek's heirs, and no such words are here present.

"*D.* There is no gift by implication of the corpus of the trust.

"*Point II.* Richard Meek's heirs under the resulting trust created by the failure of his express trust are to be determined as of the date of creation of such resulting trust.

"*A.* Richard Meek's heirs retained only a possibility of reverter which did not ripen into an actual interest until Maud Crabb's death.

"*B.* To determine Richard Meek's heirs prior to the death of Maud Crabb would frustrate his express intention that the legatees under his will should have no more than a life interest."

Their conclusion is that Richard Meek did not provide for a contingency which has actually occurred, so that the trustee now holds the corpus of the trust estate upon a resulting trust for Richard Meek's heirs and the heirs thereunder are to be determined as of the date of the creation of the resulting trust, being September 12, 1940.

On behalf of the guardian ad litem for unknown minor heirs of Mary Meek, deceased, et al., attorney Joseph P. Akau, the guardian ad litem, has reasoned and contended as *infra.*

"I. There are only two provisions that may be construed as disposing of the corpus:

"A. And should all Three of said legatees have at their decease lawful issue Then and in that event . . .

"The condition in this provision is plain and unambiguous.

"B. . . . *in default of issue* the said one third share of such deceased devisee *shall vest* in the *devisee or legatees surviving and their respective issue surviving* in equal proportions taking by representation or 'per stirpes.'

"II. * * * the Trustee" should "give and deliver the corpus of the Estate:

"To the heirs of the Testator determined as of the date of death of Richard Meek.

"There is no residuary clause in the Will; and the corpus never left the testator."

His conclusion is that: "The corpus remained in the Testator in reversion."

On behalf of Phoebe K. Reuter Kauhane, attorney Abraham G. Kaulukou, has reasoned and contended as *infra*.

"* * * that the whole of the corpus of the trust estate should be distributed per stirpes among the surviving children of the life tenants named in the Will; that since Maud Crabb died without issue, the principal of the trust estate is distributable one half to the surviving children of Ely Crabb and one half to the surviving children of Richard Reuter; that the death of Maud Crabb without issue does not cause any intestacy.

* * *

"* * * the share distributable to the children of Richard Reuter should be distributed to her alone as the only surviving child; that William Peter Reuter, Jr., the grandchild of Richard Reuter, is not entitled

to share in the distribution of the Richard Reuter share. * * *"

He has presented the following as his conclusion:

"Richard Meek, the testator, by his Will intended to dispose of his entire estate. He did this by means of a testamentary trust which provided support for his wife for her lifetime; he then provided support for certain designated objects of his affection and bounty for their respective lifetimes. When these four people had all died, the children of the three named persons, Ely Crabb, Maud Crabb and Richard Reuter, were to receive the trust principal. This intention is clear. A factual contingency has arisen which is not covered expressly by the language of the Will. The clearly expressed intention of the testator will not be allowed to fail by reason of this unprovided for factual contingency.

"The fact that one life tenant died without issue will not result in an intestacy, thereby defeating the intention. This Court should, under the application of proper rules of construction, hold that as a result of Mary Crabb dying without issue the entire principal of the trust estate should be distributed one half to the living children of Ely Crabb and one half to the living children of Richard Reuter * * *."

On behalf of William Peter Reuter, Jr., minor, attorney Ralph S. Inouye, his guardian ad litem, has reasoned and contended as *infra*.

That the first of the reserved questions should be answered in the affirmative.

That it would be erroneous "to take a literal interpretation" of the paragraph in the Will which is the subject of contention by the several parties and in so doing to disregard "the intention of the Testator as gathered from the entire Will and come out with the conclusion that all three

named income legatees have at their decease lawful issue be a condition precedent for distribution of the corpus. * * * This conclusion is absurd and is contrary to the intent of the Testator, the law of gift by implication, against the presumption against intestacy and partial intestacy and the law of vested interest."

"Upon examination of the other parts of the Will we find that the Testator intended that there shall be a final distribution of the corpus under his Will. He provided:

> 'Provided always that no final distribution of my estate shall be made until each and every one of the three devisees and legatees herein named shall have died.'

"This provision of the Testator presupposes that he had made provisions for the distribution of the corpus in the prior provisions of his Will. That is the Testator intended a distribution of the corpus by and under his Will and not by intestacy.

"* * * Again examination of the Will will show that the only persons or class of persons named to take the corpus are the children and/or issue of the three named income legatees. There is again no question that the Testator intended no one else shall take the corpus under the Will. It is expressly provided in the Will that should all three have at their decease lawful issue the children and/or issue shall take per stirpes.
* * *

"The Testator having made equal distribution of the *income* between the three named income beneficiaries and their families, it is presumed that a like distribution of the *corpus* is intended unless a contrary intention is declared."

(Citing *First Trust Co. of Hilo* v. *Roy,* 29 Haw. 474, 480 [1926]).

"In the case at bar, we need not only presume that a like distribution of the corpus as the income was intended, as was done in the case of *First Trust Co. of Hilo* vs. *Roy, supra,* but the Testator specifically provided a like distribution of the corpus in his Will. The Testator provided that if all of the three named income beneficiaries die leaving issue the Executor shall make 'equal division' to their child or children (issue) per stirpes.

"What and why is it so important that all three have issue before any issue of them can enjoy the corpus? The entire Will does not indicate that the Testator desired this particular result or made it so important and mandatory that all three have issue. Is it not more logical and consistent to say that the condition that in the event that all three have issue was set forth as an example to indicate a per stirpes distribution and it be implied that a like per stirpes distribution be made in case only two of them left issue and it would naturally follow that in case only one of them left issue such issue take the corpus."

Citing *Hapai* v. *Brown,* 21 Haw. 299 (1913), the following is quoted therefrom:

"A gift of the income, or the rents, issues and profits of the property is to be construed as a gift of the property itself unless from some language in the Will it appears that the Testator intended something different.

Conclusion:

"* * * that the distribution of the corpus of the estate of Richard Meek, deceased be, by and under his Will and not by intestacy, as follows:

"A. One half (1/2) in equal shares to the issue of Ely Crabb, per stirpes as follows:

"1. one twentieth (1/20) to Richard H. Crabbe

"2. one twentieth (1/20) to Evangeline P. Fernandez

"3. one twentieth (1/20) to Lydia K. Akiona

"4. one twentieth (1/20) to May W. Freitas

"5. one twentieth (1/20) to Eli W. Crabbe, Jr.

"6. one twentieth (1/20) to Pearl L. Ching

"7. one twentieth (1/20) to Lily C. Fujinaka

"8. one twentieth (1/20) to Amethyst K. Emmsley

"9. one twentieth (1/20) to Elizabeth H. Robertson

"10. one twentieth (1/20) to Myrtle Wong

"B. Remaining one half (1/2) in equal shares to the issue of Richard Reuter, per stirpes, as follows:

"1. one fourth (1/4) to Phoebe K. Kauhane

"2. one fourth (1/4) to William Peter Reuter, Jr."

On behalf of Evangeline P. Fernandez, Lydia K. Akiona, May W. Freitas, Eli M. Crabbe, Jr., Lily C. Fujinaka, Pearl L. Ching, Amethyst K. Wilson (formerly Amethyst K. Emmsley), Elizabeth H. Robertson, Myrtle Wong, and Richard H. Crabbe, hereinafter referred to as the "Ely Crabbe's children," James M. Richmond, their attorney, has reasoned and contended as *infra.*

(1) That the opening clause in the paragraph of the Will which reads: "And should all Three of said legatees have at their decease lawful issue," could have been more appropriately arranged thus: "And should said legatees at the decease of all three have lawful issue" and accordingly better express the intent and meaning of the testator, expressly providing for the distribution of corpus to the issue of the named life beneficiaries irrespective of whether they had issue or whether one or more had died without issue.

The words "all Three" in the referred to clause as it appears in the Will being deemed to qualify only the expression "decease" and not the phrase "have * * * issue." That would avoid "an absurd result and is the logical completion of the *expressed* plan of the testator dealing with the estate up to the time of the death of all three of the named life beneficiaries."

(2) If it be not held as aforesaid, "there is nevertheless in the Will an implied disposition of the corpus to the issue of the two life beneficiaries who did have issue. The express provisions of the Will concerning the disposition of the income and the disposition of corpus to the issue of all three of the named life beneficiaries show such intent and give rise to the implication. This Court has held that it can and should cure a defect in expression and not permit a factual contingency which was not expressly provided for in the Will — in this case the death of one life beneficiary without issue — to defeat the obvious intent of the testator taken from the Will as a whole. The general rule of the authorities is that the gift of a residue of an estate or trust which is expressly provided for in one situation will be similarly disposed of by implication in an alternative situation which is not expressly provided for where this is in accord with the general intent or pattern of the testator as set forth in his Will as a whole."

The several parties to the proceedings herein have cited numerous cases and some texts to support their respective reasonings and contentions as stated herein, *supra*. We have considered all such and the analyses thereof made by the one citing them and by the parties expressing differing views. We have also made our own evaluation thereof. We feel that to herein list and discuss the many cases in detail would unnecessarily lengthen this opinion.

Suffice it to say that examining and interpreting the Will of Richard Meek, and, in so doing, having regard for

the principles and rule applicable, enunciated *infra,* with the benefit of the briefs and oral arguments submitted and presented on behalf of the several parties in the instant matter and the differing views presented thereby, this Supreme Court believes the position taken by their attorney on behalf of the adult children of Ely Crabbe is correct and the Will of Richard Meek should be read and interpreted accordingly.

There are two guiding principles, one is that the court will, if possible, construe a Will to prevent an intestacy; the other is, that the Will should be interpreted, if possible, to avoid an absurd result.

As early as in the year 1780, in the court of King's Bench, it was declared: "There is no rule better established than that the intention of a testator expressed in his will, if consistent with the rules of law, shall prevail. That is the first and great rule in the exposition of all wills; and it is a rule to which all others must bend. It says, 'if consistent with the rules of law;' but it must be remembered, that those words are applicable only to the nature and operation of the estate and interest devised, and not to the construction of the words. A man cannot, by will, create a perpetuity; he cannot put a freehold in abeyance; he cannot limit a fee upon a fee; nor make a chattel descendible to heirs; * * *. But the question, whether the intention be consistent with the rules of law or not, can never arise, till it is settled what the intention was. This can only be discovered by taking the whole will together. If it be apparent, I know of no case that says, a strict legal construction, or a technical sense of any words whatever, shall prevail against it; * * *." Buller, Justice, in the case of *Hodgson* v. *Ambrose,* 1 Douglas 342; 99 English Reports (Full Reprint) 219. Such rule thus enunciated was recognized by Mr. Chief Justice Marshall in delivering the opinion of the court in *Smith* v.

*Bell,* in the Supreme Court of the United States, in 1832. 6 Peters 69, 31 U. S. 68; likewise in the opinion of Chief Justice Allen of the Supreme Court of Hawaii, in *Harris* v. *Judd Adm.,* 3 Haw. 421, 426 (1873). It has since been recognized, observed and followed in Hawaii. See *Zupplein* v. *Austin,* 6 Haw. 8, 10 (1867) ; *Thurston* v. *Allen,* 8 Haw. 392, 401 (1892) ; *Booth* v. *Baker,* 10 Haw. 543, 545 (1896) ; *Rooke* v. *Queen's Hospital,* 12 Haw. 375, 379 (1900) ; *Hapai* v. *Brown,* 21 Haw. 499, 505 (1913) ; *Paiko* v. *Boeynaems,* 22 Haw. 233, 238 (1914) ; *In re Isenberg Estate,* 28 Haw. 590, 649 (1925) ; *First Trust Company of Hilo* v. *Roy,* 29 Haw. 474, 480 (1926) ; *In re Estate of Deering,* 30 Haw. 217 (1927) ; *Bishop Trust Company* v. *Jacobs,* 36 Haw. 314, 323 (1942).

Considering it in its entirety, this court has gathered from the Will of Richard Meek a very definite impression that the testator intended to thereby avoid enjoyment of his estate by those who would take in the event of intestacy and, rather, to himself select and designate those who would have his estate; wherefore, he bequeathed and devised the whole of his net estate to the executor of his Will, in trust, for the use and purposes which would assure to his designees the full enjoyment of the estate. In so doing he intended to and was providing that his wife, as his widow, would have the enjoyment of all of the net income so long as she lived; upon her death the three named persons, Ely Crabb, Maud Crabb, and Richard Reuter, the survivors or survivor of them, would have the enjoyment of all of the net income while living, equally and share and share alike so long as all survived and in the event of any of them dying and leaving issue surviving, the issue to take by substitution the share which the deceased parent would have had if surviving; with final distribution of the estate to be made accordingly, that is to say, distribution of the corpus to be made to the same persons, *per stirpes,* desig-

nated as aforesaid, participating and sharing in the final division of the net income. He provided, however, that final distribution not be made until the last survivor of the named beneficiaries had died and "the youngest child" of the named beneficiaries had attained the age of twenty-one years.

However inartistically the Will is phrased, to this court, disinterested in any result other than a determination of what the testator meant by what he said, it appears quite clearly that the foregoing is the substance of what he said and what he meant by what he said. As has been said on behalf of William Peter Reuter, Jr., minor, by his guardian ad litem, as set forth supra, the entire Will does not indicate that the testator made it so important and mandatory that all three of the named beneficiaries have issue [in order that there be final distribution pursuant to the Will], it is "* * * more logical and consistent to say that the condition that in the event that all three have issue was set forth as an example to indicate a per stirpes distribution and it be implied that a like per stirpes distribution be made in case only two of them left issue and it would naturally follow that in case only one of them left issue such issue take the corpus." Further, the provision in the Will that: "* * * no final distribution of my estate shall be made until each and every of the Three devisees and legatees herein named shall have died," * * * "presupposes that he [the testator] had made provisions for the distribution of the corpus in the prior provisions of his Will. That is the Testator intended a distribution of the corpus by and under his Will and not by intestacy."

That proviso, as last quoted supra, certainly elucidates and emphasizes the meaning and intent of the testator as expressed in the paragraph immediately preceding said proviso — the paragraph as to which there has been so much controversy and which has herein, supra, been re-

ferred to as the "bone of contention" — so that to this court it appears clear and unambiguous that the clause thereof which reads, "* * * make equal division giving to the child or children of each legatee [named beneficiary] the one third share of my said *Estate* that will [would] go by the provisions of This Will to the parent [if living] of said child or children" was meant by the testator to govern how the corpus of the trust estate ("Estate") should finally be distributed. (Emphasis added.)

It is apparent that the testator, Richard Meek, was not particularly concerned that upon final distribution the estate should be divided into thirds, but that issue of the named beneficiaries should share equally therein and thereof between their rootstocks and *per stirpes* among the issue of a common ancestor. Accordingly, distribution of the corpus of the trust estate should be: one-half to the issue of Ely Crabb, his ten children, in equal shares among them (one-tenth of one-half, or one-twentieth of the whole, to each) ; and one-half to the issue of Richard Reuter, equally between them, Phoebe Kalikolehua Reuter Kauhane, his daughter, and William Peter Reuter, Jr., his grandson, (one-fourth of the whole to each).

Thus the Will of Richard Meek provides for and requires distribution of the corpus of the trust in the same manner as the net income thereof was divisible and distributable immediately preceding the termination of the trust.

It follows, as a consequence of this court so holding, as *supra,* that the five questions reserved by the lower court are disposed of as follows:

(1) Number one is answered in the affirmative;

(2) Answer to number two is foreclosed by the affirmative answer to number one;

(3) Number three is answered in the affirmative, as issue of a deceased named beneficiary take per stirpes; and

(4) and (5) Numbers four and five are answered in the negative, as foreclosed by the affirmative answer to number one.

Remanded.

*Frank D. Padgett* (*Robertson, Castle & Anthony*) for Trustees of the Estate of *Richard Meek,* deceased; filed no brief and did not argue.

*James M. Richmond* (also on the briefs) for appellees *Evangeline P. Fernandez, Lydia K. Akiona, May W. Freitas, Eli M. Crabbe, Jr., Lily C. Fujinaka, Pearl L. Ching, Amethyst K. Wilson* (formerly *Amethyst K. Emmsley*), *Elizabeth H. Robertson, Myrtle Wong,* and *Richard H. Crabbe.*

*Ralph S. Inouye* (also on the briefs), guardian ad litem for *William Peter Reuter, Jr.,* a minor, appellee.

*Abraham G. Kaulukou* (also on the brief) for *Phoebe Kalikolehua Reuter Kauhane,* appellee.

*Daral G. Conklin* (*Pratt, Tavares & Cassidy* with him on the briefs) for *E. C. S. Crabbe* and *Clarence L. Crabbe,* and all persons similarly situated, appellees.

*Joseph P. Akau* (also on the briefs), guardian ad litem for unknown minor heirs of *Mary Meek,* deceased, and representatives of all persons born or unborn who may be similarly situated in relation to said estate as a class with said minor heirs.